UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARCH INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| WM MASTERS & ASSOCIATES, INC., | § | Civil Action No. 3:12-cv-2092-M |
| JIM STEWERT, NANCY STEWERT, | § | |
| MICHAEL KIMREY, ELISE KIMREY, | § | |
| GREG THOMPSON, SARAH THOMPSON, | § | |
| MARK VALENCIA, HEEWON VALENCIA, | § | |
| and FREEMAN SALES, LLC, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for a Default Judgment as to Defendant WM Masters & Associates, Inc. ("WM Masters"), filed by Plaintiff Arch Insurance Company ("Arch" or "Plaintiff") [Docket Entry #38]. Plaintiff seeks a default judgment because WM Masters failed to timely answer or otherwise respond to Plaintiff's Complaint [Docket Entry #1], filed on June 29, 2012. For the reasons explained below, the Court **GRANTS** the Motion, and enters a default judgment against WM Masters in the amount of $1,119,696.27, plus court costs, pre-judgment interest, and post-judgment interest at the rate permitted by law.

I. JURISDICTION

This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00.

II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a Missouri corporation with its principal place of business in New York, and is engaged in the business of providing various insurance-related services across the United States. Pl.'s Compl. at 3. WM Masters is a Texas corporation engaged in the business of providing commercial and residential construction and building-related services. *Id*. WM Masters approached Plaintiff to issue performance and payment bonds in connection with certain construction projects. *Id.* Prior to issuing any bonds, Plaintiff required that WM Masters agree to indemnify Plaintiff against any losses incurred as a result of the issuance of such bonds. *Id.* On December 28, 2006, Plaintiff and WM Masters[1] executed a General Indemnity Agreement (the "2006 Indemnity Agreement"), in which WM Masters agreed to indemnify Plaintiff against liability for any losses or expenses Plaintiff may incur in connection with issuing performance and payment bonds on behalf of WM Masters, the principal. *Id.*

Plaintiff argues that it relied upon the 2006 Indemnity Agreement when it issued performance and payment bonds on behalf of WM Masters. After Plaintiff issued the bonds, Plaintiff alleges subcontractors and suppliers of WM Masters asserted claims against the bonds, contending that WM Masters failed to pay for their work and materials for various construction projects. *Id.* at 5–6. At the time of filing the Complaint, Plaintiff estimated its losses under the bonds at more than $916,470.94. *Id.* Plaintiff contends that the 2006 Indemnity Agreement requires WM Masters to indemnify and exonerate Plaintiff from any loss resulting from the issuance of the bonds.

On June 29, 2012, Plaintiff instituted this action against WM Masters and others for

---

[1] In its Complaint, Plaintiff contends that Defendant Freeman Sales, LLC ("Freeman Sales") is bound by the terms of the 2006 Indemnity Agreement as a principal, even though Freeman Sales did not sign the 2006 Indemnity Agreement. As Freeman Sales's liability is not an issue before the Court at this time, the Court does not analyze Freeman Sales's alleged obligations with respect to the 2006 Indemnity Agreement.

breach of the 2006 Indemnity Agreement and for specific performance of the 2006 Indemnity Agreement. Plaintiff also seeks relief in the form of exoneration and *quia temet/*collateralization, along with attorney's fees and expenses.[2] On July 9, 2012, Plaintiff filed proof of service with the Court showing that WM Masters was served with a copy of the Summons and Original Complaint on July 5, 2012. *See* Docket Entry #8. According to the Certificate of Service filed with the Court, Kyle W. Johnson, via electronic mail, acknowledged authority to, and did, accept service on behalf of WM Masters, even though he does not represent WM Masters in this action.[3] The Court finds that, based on the evidence submitted, service of process via electronic mail on Mr. Johnson on behalf of WM Masters, as authorized by Mr. Kimrey, WM Masters's registered agent, was effective under Federal Rule of Civil Procedure 4(h).

More than twenty-one days have passed since the date of service of process, and WM Masters has still not answered or otherwise responded to Plaintiff's Complaint. On August 23, 2012, Plaintiff requested an Entry of Default against WM Masters, which was entered the same day by the Clerk's office. On October 24, 2012, Plaintiff filed a Motion for Default Judgment against WM Masters. Citing to WM Master's alleged breach of the 2006 Indemnity Agreement, Plaintiff seeks a default judgment in the amount of $1,119,696.27, plus court costs, pre-judgment

---

[2] Exoneration is the equitable right of a surety to compel its principal to pay his or her debt and thereby discharge the surety's obligation under its bond. *See Filner v. Shapiro*, 633 F.2d 139, 142 (2d Cir. 1980). *Quia timet* is the right of the surety to compel its principal to place the surety "in funds" sufficient to prevent anticipated future losses, where a surety has reasonable grounds to believe that its principal will not perform its obligations. *In re Gas Reclamation, Inc. Securities Litigation*, 741 F.Supp. 1094, 1104-05 (S.D.N.Y. 1990).

[3] According to the principle arising from Federal Rule of Civil Procedure 4(h), absent actual authority to act as an agent for service of process, an agent is not authorized to accept service on behalf of the principal. *Bennett v. Circus U.S.A.,* 108 F.R.D. 142, 147 (N.D. Ind. 1985); Fed. R. Civ. P. 4(h)(1)(B) (service may be effected upon a foreign corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent *authorized by appointment or by law* to receive service of process") (emphasis added). On November 16, 2012, the Court ordered Plaintiff to provide additional evidence that WM Masters appointed Mr. Johnson to accept service of process on WM Masters's behalf [Docket Entry #39]. On December 13, 2012, Plaintiff submitted the sworn declaration of Mike Kimrey, the registered agent for WM Masters, which stated that Mr. Kimrey authorized WM Masters's previous counsel, Mr. Johnson, to accept service on behalf of WM Masters. The Court finds that Mr. Kimrey's appointment of Mr. Johnson, while Mr. Kimrey was acting on behalf of WM Masters as its registered agent, satisfies Federal Rule of Civil Procedure 4(h).

interest, and post-judgment interest at the rate permitted by law.[4]  WM Masters has not responded to this Motion, and the response deadline has passed.  This Motion is ripe for consideration.

### III.   ANALYSIS

Rule 55 (b)(2) of the Federal Rules of Civil Procedure governs applications to the Court for default judgment.  *See* Fed. R. Civ. P. 55(b)(2).  A default judgment is available as long as the plaintiff establishes: (1) defendant has been served with the summons and complaint and default was entered for its failure to appear; (2) defendant is neither a minor nor an incompetent person; (3) defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940;[5] and (4) if defendant has appeared in the action, that defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See, e.g.*, 50 App. U.S.C. § 521; Fed. R. Civ. P. 55; *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006).

In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court.  *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure.  *Id.*  The clerk will enter default when default is established by an affidavit or otherwise.[6]  *Id.*  After the clerk's entry of default, a

---

[4] Plaintiff claims that it has suffered additional losses after it filed its Complaint on June 29, 2012, with interest at 5%.  As of the date of Plaintiff's Motion for a Default Judgment, Plaintiff calculated its losses to be at least $1,119,696.27.

[5] The Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. app § 501, provides specific requirements that must be fulfilled before a default judgment may be entered.

[6] The plaintiff is responsible for properly serving the defendants with a summons and a copy of the complaint.  Fed. R. Civ. P. 4(c)(1).  Once served, a defendant must file a reply to the complaint within twenty-one days of service. Fed. R. Civ. P. 12(a)(1)(A)(i).  Until the plaintiff serves the defendant, the defendant has no duty to answer the complaint and the plaintiff cannot obtain a default judgment.  *Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d

plaintiff may apply to the district court for a judgment based on such default. *Id.*

The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999). *See also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). This policy, however, is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers*, 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)). *See also Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

When making a determination as to whether or not to enter a default judgment, district courts are to consider the following factors: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.,* 161 F.3d 886, 893 (5th Cir. 1998). Any doubt as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party. *See id.*

The Court finds that the prerequisites for entering a default judgment are satisfied. First, as a corporation, WM Masters is neither a minor nor an incompetent person, nor can it be active in military service. *See* Fed. R. Civ. P. 55(b)(2); 50 App. U.S.C. § 521(a),(b)(1)(A)–(B). Second, WM Masters has not filed any responsive pleadings or otherwise appeared in this case,

---

933, 937 (5th Cir. 1999).

and thus has not contested any facts presented in Plaintiff's Complaint. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Third, WM Masters's failure to respond to Plaintiff's Complaint threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests in pursuing its rights afforded by law. *Lindsey*, 161 F.3d at 893. Fourth, there is no evidence before the Court that "a good faith mistake or excusable neglect" caused the default. WM Masters has had over six months to answer or otherwise respond to Plaintiff's Complaint, mitigating the harshness of a default judgment. Fifth, Plaintiff seeks only the relief to which it seemingly is contractually entitled under the 2006 Indemnity Agreement, and the Court is aware of no applicable defense. *See Helena Chemical Co. v. Goodman et al.*, No. 5:10–cv–121, 2011 WL 1532200, at *1 (S.D. Miss. Apr. 21, 2011) (noting that the district court, in deciding whether to grant a motion for a default judgment, should consider whether the defendant has a meritorious defense to the complaint). Finally, based on the facts known to the Court, there is no "good cause" for which it would be obligated to set aside the default if later challenged by WM Masters. *See Lindsey*, 161 F.3d at 893; *CJC Holdings v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992).

The Court notes that "a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Lindsey*, 161 F.3d at 893. *See also Jackson v. FIE Corp.,* 302 F.3d 515, 525 n. 29 (5th Cir. 2002) (noting that after a default judgment, the factual allegations of the complaint are taken as true, except regarding damages); *Nishimatsu Constr. Co.*, 515 F.2d at 1206. Ordinarily, damages will not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). But when

the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents, and when a hearing would not be beneficial to the court, a hearing is unnecessary. *James v. Frame,* 6 F.3d 307, 310 (5th Cir. 1993). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311 (internal citations omitted).

Plaintiff's Complaint alleges breach of an indemnity agreement. Under Texas law, to prevail on a breach of indemnity agreement claim, a plaintiff must establish five elements: "(1) a contractual indemnity agreement existed between the [parties]; (2) the agreement obligated the [defendant] to indemnify [plaintiff] in the event claims were made on the bonds issued. . .; (3) claims were made on the bonds issued. . .; (4) all conditions precedent for recovery had occurred, been performed, waived, or excused; and (5) [plaintiff] has been damaged." *Transamerica Ins. Co. v. Avenell,* 66 F.3d 715, 719 (5th Cir. 1995). More generally, the elements of a breach of contract action under Texas law are as follows: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Crowder v. Scheirmann,* 186 S.W.3d 116, 118–19 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The Texas Supreme Court requires that indemnity agreements be strictly construed to give effect to the parties' intent, as expressed in the agreement. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 284 (Tex. 1998) (indemnity agreements are construed under the normal rules of contract construction).

Here, Plaintiff alleges that it entered into the 2006 Indemnity Agreement through which WM Masters agreed to indemnify Plaintiff for any and all losses or expenses incurred by Plaintiff in issuing the bonds on behalf of WM Masters. Pl.'s Compl. at 3–4. Plaintiff also

contends that several claims were made on the bonds. *Id.* When Plaintiff filed its Motion for a Default Judgment, it stated its losses to be in excess of $1,119,696.27. Taking these allegations to be true, Plaintiff has satisfied the elements to make out a valid claim for breach of an indemnity agreement.[7] *See Washington Intern. Ins. Co. v. Consol. Metroplex Const. Services, L.L.C.*, No. 4:10–cv–573–A, 2011 WL 1676428 (N.D. Tex. May 3, 2011) (McBryde, J.)

As to the amount of damages to which Plaintiff is entitled, Plaintiff attached the 2006 Indemnity Agreement to its Motion for a Default Judgment. It identifies "losses" as:

> all liability, losses, expenses, and fees of whatever kind or nature, that the Surety may sustain or incur as a result of executing any Bond or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement. Loss includes but is not limited to: (a) sums posted by Surety as a reserve for the payment of potential losses and/or expenses; (b) all costs and expenses incurred in connection with investigating, paying or litigating any claim and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses, (c) all accrued and unpaid premiums owing to Surety for the issuance, continuation, or renewal of any Bonds or for any policy of insurance issued by Surety for the Principal or Indemnitors, (d) funds advanced by the Surety to the Principal in connection with a Bonded Contract, and (e) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

*See* 2006 *General Indemnity Agreement* at 2. Plaintiff also submitted in support of its Motion the Declaration of Will Pearce, Claims Counsel for Arch Insurance Company. In his Declaration, Mr. Pearce identified the performance and payment bonds issued by Plaintiff on behalf of WM Masters, and he attached and affirmed an itemized statement of losses and

---

[7] Plaintiff also seeks specific performance, exoneration, and *quia timet*. Specific performance is an equitable remedy that may be used as a substitute for monetary damages when such damages would not be adequate. *Stafford v. Southern Vanity Magazine, Inc.,* 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied) (citations omitted). The Court finds that relief unnecessary here. Second, Plaintiff's Motion for Default Judgment does not request that the Court enforce its rights to exoneration and *quia timet*. Plaintiff's Motion for a Default Judgment seeks $1,119,696.27, plus court costs, pre-judgment and post-judgment interest.

expenses incurred by Plaintiff on those bonds. Those are losses incurred by Plaintiff as a result of issuing bonds on behalf of WM Masters, and thus, are losses for which Plaintiff is entitled to indemnification under the terms of the 2006 Indemnity Agreement. As Plaintiff's losses are fully itemized, and thus capable of mathematical calculation, the Court concludes Plaintiff's losses due to WM Masters's conduct can be ascertained without a hearing. *See Leedo Cabinetry v. James Sales & Distribution, Inc.,* 157 F.3d 410, 414 (5th Cir. 1998) (evidentiary hearing on damages unnecessary where affidavit and supporting documents demonstrated amount owed to the plaintiff).

### IV.   CONCLUSION

For the reasons explained above, the Court **GRANTS** Plaintiff's Motion for Default Judgment. Plaintiff shall recover from and against WM Masters as follows:

a) Actual damages: $1,119,696.27;

b) Interest at the rate of 5% per annum from June 29, 2012, the date Plaintiff filed its Complaint, to the date of this Judgment;[8]

c) Post-judgment interest at the rate of .15% per annum from this date until the Judgment is fully paid; and

d) Costs of Court.

**SO ORDERED**.

Dated: January 14, 2013.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[8] Under 28 U.S.C. § 1961(a), in diversity cases, post-judgment interest is calculated at the federal rate, while pre-judgment interest is calculated under state law. *See Nissho-Iwai Co. v. Occidental Crude Sales,* 848 F.2d 613 (5th Cir. 1988).